Stephanie L. TROEGER,
D.D.S, Appellant,

v.

Margaret MYKLEBUST, Appellee.

No. 14–07–00884–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Aug. 28, 2008.

Rehearing Overruled Nov. 20, 2008.

John Gregory Myers, Becca E. Pass-man, Kroger, Myers, Frisby & Hirsch, Houston, TX, for Appellant.

Jana K. Landry, Webster, TX, for Appellee.

Panel consists of Justices YATES, GUZMAN, and BROWN.

## OPINION

EVA M. GUZMAN, Justice.

In this health care liability case filed against a single health care provider, Stephanie L. Troeger, D.D.S., brings this accelerated interlocutory appeal of the trial court's denial of her motion to dismiss. Because the expert report served by claimant Margaret Myklebust implicates Dr. Troeger's conduct, Troeger has waived any complaint regarding the adequacy of the report by failing to timely object. We therefore affirm the trial court's denial of her motion to dismiss.

## I. Factual and Procedural Background

On April 10, 2007, appellee Margaret Myklebust sued appellant Stephanie L. Troeger, D.D.S., alleging that Troeger provided negligent dental care. Nine days after suit was filed, Troeger was served with Myklebust's Original Petition and the expert report of Giancarlo G. Romero, D.D.S., together with Dr. Romero's curriculum vitae. The two-page expert report did not identify Troeger by name, but provided in relevant part as follows:

Mrs. Margaret Myklebust was referred to my practice on May 08, 2006 by Dr. Aldo Sordelli for limited consultation. . . .

5. Describe you[r] experience involving the plaintiff's injury.

At the time of consultation Mrs. Myklebust was complaining of burning and itching sensation on the area of teeth # 7, 8, 9, and 10. Also, she complained of inflammation and bleeding gingival (gum). In my initial consultation, it was noticed the presence [sic] of 4 ceramic restorations on these teeth which according to Mrs. Myklebust were fabricated by her previous dentist. These complain[t]s were then confirmed at the time of examination. Gingival probing was then performed confirming the violation of biological width on these teeth. . . .

6. Describe the specific conduct the plaintiffs are calling into question.

At the time of first consultation, Mrs. Myklebust was complaining that [her] previous dentist drilled teeth to[o] deep and from that time on, she started having previously mentioned symptoms. Also claims that dentist proceeded to take a biopsy of the inflamed tissue without any explanation for this procedure.

7. What are the applicable standards of care?

Before a tooth is prepared for any type of crown, gingival tissues surrounding the tooth need to be probed for classification of the depth of the biological width. If this is violated, symptoms of burning, itching, constant bleeding will appear. If this is the situation, patient needs to be explained of problem [sic] and presented with alternative options of treatment to resolve the problem.

8. Describe the manner in which the care failed to meet those standards.

Teeth in question presented with biological width violation symptoms and according to patient, she was not explained cause and was not presented with alternative of treatments.

9. How did violation of the standard of care cause injury?

The lack of knowledge on the principle of biological width on a tooth[ ] created injury of such at the time of crown preparation causing constant inflammation, burning and itching symptoms.

10. Why does this case have merit?

Previous dentist should have had knowledge of standard of care for a crown preparation. If any mistake is done, patient is entitled to know what happen[ed] and what options she has to resolve the problem for her satisfaction.

■ More than 120 days after Myklebust filed suit,[1] Troeger filed a motion to dismiss in which she argued that Myklebust failed to timely serve an expert report implicating Troeger's conduct because Romero did not identify Troeger by name in his expert report. According to Troe-

---

1. Troeger filed her Motion to Dismiss on August 29, 2007, 142 days after Myklebust filed suit.

ger, the report was the legal equivalent of "no report." Myklebust responded that Troeger waived any argument that the expert report was deficient by failing to object to the report within 21 days of service. In the alternative, Myklebust argued that the expert report satisfied statutory requirements. The trial court denied the motion to dismiss, and Troeger filed this accelerated interlocutory appeal.[2]

## II. ISSUE PRESENTED

In a single issue, Troeger contends the trial court abused its discretion in denying her motion to dismiss, thereby implicitly ruling that her conduct was implicated.

## III. ANALYSIS

### A. Expert Report Requirements

This is a health care liability lawsuit governed by chapter 74 of the Texas Civil Practice & Remedies Code. TEX. CIV. PRAC. & REM.CODE ANN. §§ 74.001–.507 (Vernon 2005 & Supp.2007). In such a suit, the claimant must serve on each health care provider or the provider's attorney one or more expert reports, with the curriculum vitae of each expert listed in the report, within 120 days of filing suit. *Id.* § 74.351(a). The report must provide a fair summary of the expert's opinions regarding (1) the applicable standard of care; (2) the manner in which the care provided failed to meet that standard; and (3) the causal relationship between that failure and the injury, harm, or damages claimed. *Id.* § 74.351(r)(6). In section 74.351, the legislature used the phrase "has not been served" to refer to deficient reports as well as absent reports. *Compare* § 74.351(b) (trial court shall dismiss if an expert re-

port "has not been served") *with* 74.351(c) (trial court may grant a 30–day extension if an expert report "has not been served ... because elements of the report are found deficient"). Nevertheless, the consequences arising from failure to serve an expert report regarding a particular defendant and service of a deficient expert report are different. *See Ogletree v. Matthews*, 262 S.W.3d 316, 319–21 (2007) ("[A] deficient report differs from an absent report.").

■ If the claimant fails to serve an expert report as to a particular health care provider within 120 days, the trial court must, on the health care provider's motion dismiss the claim against that provider with prejudice and award the provider reasonable attorney's fees and costs and. TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(b). The statute contains no deadline to challenge the timeliness of an expert report. *Id.; Poland v. Grigore*, 249 S.W.3d 607, 616 (Tex.App.–Houston [1st Dist.] 2008, no pet.) (addressing predecessor statute). On the other hand, if a timely-served report implicates a particular defendant's conduct, the defendant must file and serve "*any* objection to the sufficiency of the report not later than the 21st day after the date it was served, failing which *all* objections are waived." TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(a) (emphasis added); *Poland*, 249 S.W.3d at 616. If valid objections have been timely asserted, dismissal is not required if the deficiencies of a timely report are curable. *See Ogletree*, 262 S.W.3d at 319–21. Under such circumstances, the court retains discretion to grant a single 30–day extension to cure the deficiency. TEX. CIV. PRAC. & REM.CODE

---

2. A party may take an interlocutory appeal of the denial of a motion to dismiss based on failure to timely serve an expert report. TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(9) (Vernon Supp.2007); *Lewis v. Funderburk*, 253

S.W.3d 204, 207–08 (Tex.2008). Cases in which an expert report "has not been served" include those in which a report, although physically served within 120 days of suit, is legally deficient. *Id.*

Ann. § 74.351(c). A court shall grant a motion challenging the adequacy of an expert report only if it appears to the court, after hearing, that the report does not represent an objective good faith effort to comply with the statutory definition of an expert report. *Id.* § 74.351(*l*).

## B. Waiver

■ Both in the court below and here, Myklebust argues that because Troeger asserted no objections within 21 days after the expert report was served, she waived all objections to its adequacy. *See id.* Troeger contends she was not required to object because she was not identified by name in the expert report, and thus, her conduct was not "implicated." According to Troeger, the omission of her name rendered the expert report so inadequate that it was the legal equivalent of "no report" and thus, the deadline to object to the sufficiency of the report did not apply.

As a threshold issue, then, we must determine whether Troeger's challenges to the expert report have been waived. We are not concerned here with whether the expert report fulfilled all statutory requirements, but only with whether it implicated the defendant's conduct such that the 21–day deadline for objections was triggered. If Troeger's conduct was implicated, then Troeger's failure to object to the report within 21 days waives her right to challenge the report on appeal, regardless of whether the objections would have been otherwise valid.

In her motion to dismiss, Troeger argued that her conduct was not implicated because an expert report must "specifically identify the defendant by name and explain what that individual defendant did to breach the standard of care." In support of this argument she relied on *Taylor v. Christus Spohn Health System Corp.*,[3] *Wood v. Tice*,[4] and *Horsley–Layman v. Angeles.*[5] None of these cases, however, support her position.

In *Taylor*, the Thirteenth Court of Appeals held that the trial court did not abuse its discretion in dismissing a health care liability claim against multiple defendants.[6] In the report at issue in that case, the expert "simply state[d] that various procedures that should have occurred did not, without specifying which party was responsible for undertaking which procedures." Each of the defendants, including an emergency room physician, a hospital, and a cardiology association, owed different duties to the patient; thus, the single standard of care described in the expert report did not apply to all defendants, and the expert did not identify those defendants to whom it did apply.[7] In the present case, however, there is a single defendant; thus, the reasoning in the *Taylor* opinion does not support Troeger's position.

■ An additional factor in the *Taylor* opinion further undermines Troeger's position. In that case, the reviewing court held that "it was not an abuse of discretion for the trial court to conclude that the report did not represent a good faith effort to comply" with statutory requirements.[8] Such a determination is necessary only

3. 169 S.W.3d 241, 244 (Tex.App.–Corpus Christi 2004, no pet.).

4. 988 S.W.2d 829, 831–32 (Tex.App.–San Antonio 1999, pet. denied).

5. 968 S.W.2d 533, 535 (Tex.App.–Texarkana 1998, no pet.).

6. 169 S.W.3d at 246.

7. *See id.*

8. *Id.*

when a court grants a motion "challenging the adequacy of an expert report...." *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(*l*) ("A court shall grant a motion *challenging the adequacy of an expert report* only if it appears to the court, after hearing, that the report does not represent an objective good faith effort to comply with the definition of an expert report ....") (emphasis added). A motion challenging the adequacy of an expert report is the equivalent of an objection to the sufficiency of an expert report. *Poland,* 249 S.W.3d at 616. Because an objection to the sufficiency of the expert report concerns the report's substance, rather than the timeliness of its service,[9] such an objection is waived if it is not filed and served within 21 days after service of the report. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(a). That requirement was not satisfied here.

Troeger's reliance on *Wood v. Tice* also is misplaced. There, the claimant sued three dentists and a limited liability corporation.[10] The claimant did not produce an expert report but instead served the individual defendants with a transcript of an expert's deposition.[11] The Fourth Court of Appeals held that the trial court did not abuse its discretion in dismissing the plaintiff's health care liability claims because the expert (1) failed to mention the defendants by name, (2) failed to specify how the defendants breached the standard of care, and (3) failed to demonstrate causation and damages.[12] In addition, there was no indication that the plaintiff served the defendants with a copy of the expert's curriculum vitae.[13] *Wood* does not stand for the proposition that the omission of the

defendant health care provider's name is sufficient, without more, to convert a timely report into the legal equivalent of an unserved report.

*Horsley–Layman* is also readily distinguishable. There, the claimant timely filed an expert report as to one physician but did not file an expert report regarding the appellee until 246 days after filing suit and approximately three weeks after the appellee moved for dismissal.[14] Thus, any expert report regarding the appellee was barred by its untimeliness, regardless of its content.

Our analysis is unaffected by similar cases cited by Troeger in which the only reports filed within 120 days of suit were directed to the conduct of non-party health care providers or co-defendants. *See Apodaca v. Russo,* 228 S.W.3d 252, 257 (Tex. App.–Austin 2007, no pet.) (expert report referred to other health care providers but did not mention sole defendant or discuss how that physician breached the standard of care or caused injury or damages); *Garcia v. Marichalar,* 198 S.W.3d 250, 252 (Tex.App.–San Antonio 2006, no pet.) ("[T]hat report, *which focused on the acts committed by other defendants,* did not mention Garcia at all.") (emphasis added); *see also Rivenes v. Holden,* 257 S.W.3d 332, 338 (Tex.App.–Houston [14th Dist.] May 8, 2008, no pet. h.) (expert report directed to the conduct of co-defendant physician, hospital, and unidentified "emergency room staff"). Cases in which the claimant did not contend that the defendant health care provider waived objections to the expert report by failing to object within a statutory deadline are like-

9. *Id.*

10. *Wood,* 988 S.W.2d at 830.

11. *Id.* at 831.

12. *Id.* at 831–32.

13. *Id.* at 832.

14. *Horsley–Layman,* 968 S.W.2d at 535.

wise inapposite. *See, e.g., Jernigan v. Langley*, 195 S.W.3d 91, 92 (Tex.2006) (per curiam) (addressing whether expert report met specificity requirements of section 13.01 of the Medical Liability and Insurance Improvement Act, former Tex.Rev. Civ. Stat. Ann. art. 4590i, § 13.01,[15] which unlike the current law, did not require a defendant whose conduct was implicated to raise objections to the report within 21 days); *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 53 (Tex.2002) (per curiam) (same); *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 878 (Tex.2001) (same); *Longino v. Crosswhite ex rel. Crosswhite*, 183 S.W.3d 913, 916 (Tex.App.–Texarkana 2006, no pet.) (no contention that defendant health care provider waived challenge to expert report by failing to timely object). In those cases in which the defendant health care provider filed a motion to dismiss within 21 days after service of the expert report, the issue of waiver does not arise. *See, e.g., Cayton v. Moore*, 224 S.W.3d 440, 444 (Tex.App.–Dallas 2007, no pet.) (motion to dismiss filed 21 days after expert report); *Austin Heart, P.A. v. Webb*, 228 S.W.3d 276, 279 (Tex.App.–Austin 2007, no pet.) (same).

■ We agree that a report does not satisfy the requirements of section 74.351(a) for a specific health care provider merely because the provider is a defendant. *See Apodaca*, 228 S.W.3d at 258. But, on the other hand, a report does not fail to implicate a defendant's conduct solely because the defendant is not identified by name. *See Ogletree*, 262 S.W.3d 316, 317, 321–22 (Tex.2007) (expert report "implicated" a defendant's conduct because it was directed solely to the defendant physician's care "although it did not mention him by name").

We conclude that the expert report here did not fail to implicate Troeger's conduct by omitting her name; thus, Troeger waived her challenges to the expert report by failing to raise her objections within 21 days of service. *See Bogar v. Esparza*, 257 S.W.3d 354, 357–58 (Tex.App.–Austin May 16, 2008) (although defendant physician asserted that the report was "no report" as to him, he timely objected to the report); *Poland v. Grigore*, 249 S.W.3d 607, 615–16 (Tex.App.–Houston [1st Dist.] 2008, no pet.) (discussing objections that must be raised within 21 days). Because the trial court's denial of Troeger's motion can be affirmed on this basis, we hold the trial court did not abuse its discretion by denying Troeger's motion to dismiss, and therefore, we overrule Troeger's sole issue on appeal.

## V. CONCLUSION

Because we hold that Troeger waived the arguments presented on appeal by failing to raise her objections to the expert report within 21 days of service, we affirm the trial court's denial of her motion to dismiss without reaching the merits of Troeger's challenge to the sufficiency of the report.

---

**15.** Act of May 5, 1995, 74th Leg., R.S., ch. 140, § 1, 1995 Tex. Gen. Laws 985, 985–87 (adding expert report requirement, at former Tex.Rev.Civ. Stat. art. 4590i, § 13.01(d)), *repealed and recodified as amended by* Act of June 2, 2003, 78th Leg., R.S., ch. 204, §§ 10.01, 10.09, 23.02(a), (d), 2003 Tex. Gen. Laws 847, 864, 884, 898–99 ("House Bill 4") (adopting chapter 74 of the Texas Civil Practice and Remedies Code, applicable only to actions filed on or after September 1, 2003, and continuing prior law in effect for actions filed before that date), *amended,* Act of May 18, 2005, 79th Leg., R.S., ch. 635, § 1, 2005 Tex. Gen. Laws 1590, 1590 (current version at TEX. CIV. PRAC. & REM.CODE ANN. § 74.351 (Vernon Supp.2007)).