

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-23-00204-CV

ANDREA NICOLE FULLER, P.A., APPELLANT

V.

SHON THOMAS MILTON AND JAMIE BREANN MILTON, INDIVIDUALLY AND AS
NEXT FRIENDS FOR A.E.M., A MINOR, APPELLEES

On Appeal from the 181st District Court
Potter County, Texas
Trial Court No. 110546-B-CV, Honorable Titiana Frausto, Presiding

December 11, 2023

## MEMORANDUM OPINION

Before PARKER and DOSS and YARBROUGH, JJ.

Appellant, Andrea Nicole Fuller, P.A., appeals the trial court's order denying her motion to dismiss the health care liability claims asserted against her by Appellees, Shon Thomas Milton and Jamie Breann Milton, individually and as next friends of A.E.M., a minor. We reverse and remand.

On June 4, 2019, Appellees brought their nearly three-year-old daughter to CareXpress Urgent Care with complaints of a sore throat and strep throat exposure. Based on her reported symptoms, A.E.M. was treated for acute infection pharyngitis and strep throat exposure. Fuller, a physician assistant, ordered that A.E.M. be given a Bicillin injection. The injection was administered by Tonya Hodges, a medical assistant. Hodges gave the shot intramuscularly in A.E.M.'s left thigh. After A.E.M. began to develop adverse reactions in her left leg and foot, she was transferred to Baptist St. Anthony's Hospital's emergency department. When her condition did not improve, A.E.M. was transported via air ambulance to Cook Children's Medical Center in Fort Worth. Ultimately, A.E.M. underwent four surgeries before being discharged with continuing loss of tissue and nerve damage in the left leg, requiring physical therapy and the continued use of orthotics.

Appellees filed suit against multiple defendants, including Fuller, on August 13, 2021. Along with their petition, Appellees filed expert reports of J. Eric Gordon, M.D., and Valorie E. Kiper, D.N.P., M.S.N., R.N., NEA-BC, along with the experts' curricula vitae. Gordon's report addressed the conduct of other defendants but did not specifically or generally address the conduct of Fuller. Kiper's report cites CareXpress records and identifies that Fuller ordered that A.E.M. be given a Bicillin injection. Kiper's only other mention of Fuller provides that, after A.E.M. experienced adverse reactions to the injection, Fuller "reviewed with the LVN and MA who were in the room when the injection

---

[1] Because there is no evidentiary hearing in connection with a Chapter 74 review, the substantive facts provided here are drawn from the parties' pleadings and the expert reports filed by Appellees.

was given that it was given in the right place." Kiper's report does not identify a standard of care required of Fuller specifically or a physician assistant generally.

On March 16, 2023, Fuller filed a motion to dismiss Appellees' claims against her for failure to comply with the expert report requirement of Texas Civil Practice and Remedies Code Chapter 74. In this motion, Fuller argued that Appellees' expert reports failed to satisfy the statutory requirements of an expert report as to her and, as such, were the equivalent of failing to file an expert report relating to Appellees' claims against Fuller. In response, Appellees contended that Fuller waived any objection to the insufficiency of Appellees' expert reports by failing to object to the same within twenty-one days of the expert reports being served. Fuller's motion to dismiss was filed 534 days after Appellees filed their petition and the expert reports of Gordon and Kiper. Alternatively, Appellees also argued that Kiper's report does identify the standard of care owed by Fuller and how she breached that standard.

After considering the motion and response, the trial court denied the motion on April 28, 2023. Fuller timely filed the instant interlocutory appeal. By her appeal, Fuller presents one issue: "because of the absence of a compliant report, the trial court should have granted Fuller's motion to dismiss under Chapter 74."

## STANDARD OF REVIEW

The trial court's refusal to dismiss may be immediately appealed. TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(9); *Scoresby v. Santillan*, 346 S.W.3d 546, 549 (Tex. 2011). We review a trial court's ruling on a motion to dismiss under section 74.351 for an abuse of discretion. *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873,

3

878 (Tex. 2001). A trial court abuses its discretion when it acts in an arbitrary or unreasonable manner or without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985).

## EXPERT REPORT REQUIREMENT

The Medical Liability Act entitles a defendant to dismissal of a health care liability claim if she is not served with an expert report showing that the claim has merit within 120 days of the date suit was filed. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b); *Scoresby*, 346 S.W.3d at 549. To satisfy this requirement, the report must be "a written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6); *see also* § 74.351(r)(5) (defining "expert" as used in the definition of "expert report"). Each defendant physician or health care provider whose conduct is implicated in a report must file and serve any objection to the sufficiency of a report not later than the twenty-first day after the date the report was served; otherwise, the defendant's objections are waived. *See id.* § 74.351(a). Under the nomenclature used in the statute, both a "deficient report" and "no report" fall within the category of "no expert report." *See id.* § 74.351(a), (c); *Ogletree v. Matthews*, 262 S.W.3d 316, 320 n.2 (Tex. 2007).

The Act specifies the requirements for an adequate report and mandates "an objective good faith effort to comply" with the requirements. TEX. CIV. PRAC. & REM. CODE

4

ANN. § 74.351(l), (r)(6); *Scoresby*, 346 S.W.3d at 549. When determining if a good-faith effort has been made, the trial court is limited to the four corners of the report and may not consider extrinsic evidence. *See Jelinek v. Casas*, 328 S.W.3d 526, 539 (Tex. 2010); *Palacios*, 46 S.W.3d at 878. The expert must demonstrate in the report that he or she is qualified to provide an acceptable report and must give a fair summary of his or her opinions regarding the standard of care, the manner in which the standard was breached, and the causal relationship between the breach and the alleged injury. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(5)(B), (r)(6); *Sinha v. Thurston*, 373 S.W.3d 795, 799 (Tex. App.—Houston [14th Dist.] 2012, no pet.). Moreover, the expert must incorporate sufficient information into the report to inform the defendant of the specific conduct being called into question and provide a basis for the trial court to conclude the claims have merit. *Jelinek*, 328 S.W.3d at 539. "A report need not marshal all the plaintiff's proof, but it must include the expert's opinion on each of the elements identified in the statute." *Palacios*, 46 S.W.3d at 878–79. Further, a conclusory report or one that omits any of the statutory requirements does not constitute a good-faith effort. *Id.* at 879.

To be a report as to a particular defendant, there is no requirement that a document refer to the defendant by name, so long as it implicates the defendant's conduct. *Troeger v. Myklebust*, 274 S.W.3d 104, 110 (Tex. App.—Houston [14th Dist.] 2008, pet. denied). A report served in a medical liability lawsuit does not implicate a particular health care provider's conduct merely because the provider is a defendant in the lawsuit. *Id.* "[W]here a defendant is not identified at least in some manner within the 'four corners' of the report, the report is, for that reason alone, deficient as to that defendant because it would require

5

the reader to infer or make an educated guess as to whose actions the expert is complaining." *Bogar v. Esparza*, 257 S.W.3d 354, 364 (Tex. App.—Austin 2008, no pet.).

**ANALYSIS**

By her sole issue, Fuller contends that neither expert report filed by Appellees adequately describes the complaints made by Appellees as to the conduct of Fuller and, therefore, the trial court abused its discretion in denying her motion to dismiss Appellees' claims against Fuller.

Dr. Gordon's report does not refer to Fuller by name or position and does not attempt to address her conduct. The dispute in this appeal relates to whether Valerie Kiper's report constitutes a good-faith effort to comply with the requisites of the statute. If so, Fuller was obligated to object to the insufficiency of the reports within twenty-one days of when they were filed or her objections were waived. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a). By contrast, if the reports filed by Appellees do not constitute a good-faith effort to comply with the requisites of the statute, they are the equivalent of no report and Fuller could object to the reports at any time after the 120-day deadline to file a report. *See Rivenes v. Holden*, 257 S.W.3d 332, 338 (Tex. App.—Houston [14th Dist.] 2008, pet. denied). "To be a report as to a particular defendant, there is no requirement that a document refer to the defendant by name, so long as it implicates the defendant's conduct." *Sinha*, 373 S.W.3d at 800.

According to their pleadings, Appellees brought suit against Fuller alleging that she was negligent in failing to supervise personnel relating to the giving of an injection to A.E.M. However, nothing in Kiper's report identifies the standard of care required of a

6

physician assistant in supervising the administration of the Bicillin injection. In fact, nothing in Kiper's report indicates that Fuller owed a duty to supervise the administration of the Bicillin injection.[2] In her report, Kiper cites the medical records as providing that Fuller ordered the Bicillin injection and that, after the adverse reaction occurred, Fuller "reviewed with the LVN and MA . . . that [the injection] was given in the right place."[3] "Identifying the standard of care is critical: Whether a defendant breached his or her duty to a patient cannot be determined absent specific information about what the defendant should have done differently." *Palacios*, 46 S.W.3d at 880. At best, Kiper's report required Fuller to infer the standard of care applicable to her and, because no standard of care is identified, the report wholly fails to address how Fuller's alleged breach of the standard of care caused A.E.M. to suffer damages. *See Thomas v. Torrez*, 362 S.W.3d 669, 678 (Tex. App.—Houston [14th Dist.] 2011, pet. dism'd)[4] ("We conclude that the passing references to one instance of care rendered by [Appellant] do not implicate the conduct of [Appellant]. We base this conclusion on the lack of any criticism of [Appellant's] care, any statement that [Appellant] violated any standard of care, and any

---

[2] We note that the trial court was limited to the "four corners" of the expert reports to determine whether the reports gave a fair summary of the standard of care, the manner in which the standard of care was breached, and the causal relationship between the breach and the alleged injury. *See Palacios*, 46 S.W.3d at 878–79; *Bogar*, 257 S.W.3d at 364.

[3] From this, Appellees contend that Fuller held a supervisory position over the LVN and MA who administered the injection. We emphasize that nothing in the "four corners" of Kiper's report provides that the subsequent review of where the injection was administered establishes that Fuller owed the duty of a supervisor.

[4] We find the *Thomas* opinion particularly relevant to the issue before us because, while the timely-filed expert reports made a "brief mention" of the care given by Appellant (ordering potassium replacement), they did not identify the standard of care applicable to Appellant, criticize the care that was given by Appellant, or identify how that care should have been different. *Thomas*, 362 S.W.3d at 677–78.

statement that she caused harm to [Appellee]."); *Rivenes*, 257 S.W.3d at 338–39[5] ("The report fails to discuss how the care rendered by *appellant* failed to meet the applicable standard of care, or how *appellant's* failure caused Holden to suffer injury, harm, or damages.") (emphasis in original). As such, Kiper's report does not constitute a good-faith effort to comply with the statute. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(5)(B), (r)(6); *Sinha*, 373 S.W.3d at 800. Because the expert reports filed by Appellees do not constitute a good-faith effort to comply with the statute as they relate to Appellees' claims against Fuller, they are the equivalent of no report and Fuller could object at any time. *See Rivenes*, 257 S.W.3d at 338. We sustain Fuller's sole appellate issue.

## CONCLUSION

Having sustained Fuller's sole issue, we reverse the trial court's order denying Fuller's motion to dismiss, and remand to the trial court with instructions to dismiss Appellees' claims against Fuller and award her reasonable attorney's fees and costs of court under section 74.351(b) of the Civil Practice and Remedies Code.

Judy C. Parker
Justice

---

[5] We also find *Rivenes* particularly relevant to the instant case because the timely-filed expert report did not offer any opinions concerning the conduct of the doctor, whether the care rendered by the doctor failed to meet the applicable standard of care, and how the alleged conduct by the doctor caused the plaintiff to suffer injury or damage. *See Rivenes*, 257 S.W.3d at 337–39.